418

■ L'Art de Jewel Ltd., Respondent-Appellant, v Hudson Sheraton Corporation, LLC, Respondent-Appellant, and The Hyman Companies, Inc., Doing Business as Landau Costume Jewelry, Appellant-Respondent and Third-Party Plaintiff-Appellant-Respondent. HST Lessee SNYT LLC, Third-Party Defendant-Respondent-Appellant. [850 NYS2d 3]—

Orders, Supreme Court, New York County (Walter B. Tolub, J.), entered January 18 and May 11, 2006, which, with respect to defendant Hyman, doing business as Landau, (1) determined it to be in breach of its license agreement with defendant Hudson Sheraton (hotel), (2) granted plaintiff partial summary judgment on its first cause of action against the hotel to the extent it determined Landau to be in breach of the restrictive covenant in plaintiff's lease, (3) granted the hotel's cross motion for summary judgment dismissing Landau's first (contribution and indemnification) and third (breach of license agreement) cross claims against the hotel, and (4) denied Landau's cross motion to dismiss the hotel's four cross claims against Landau for breach of license, indemnification, contribution and attorney fees; with respect to defendant hotel, (A) denied its cross motion to dismiss plaintiff's first (breach of lease) and fifth (injunctive relief) causes of action against it, (B) denied its cross motion to dismiss Landau's second cross claim (legal expenses) against it, and (C) granted plaintiff summary judgment on its first cause of action (breach of the restrictive covenant); and with respect to plaintiff, (i) denied its motion for summary judgment on its fifth cause of action (injunctive relief against Landau), (ii) granted the hotel's cross motion to dismiss the second (breach of lease), third (fraudulent misrepresentation) and fourth (interference with business) causes of action, and (iii) granted Landau's cross motion to dismiss the fifth cause of action (injunctive relief), unanimously modified, on the law, Landau's motion to dismiss the hotel's cross claims granted; the hotel's motion to dismiss the first and fifth causes of action granted; and otherwise affirmed, without costs.

Order, same court and Justice, entered December 7, 2006, insofar as it denied third-party defendant HST's motion to dismiss the third-party complaint, and granted plaintiff's motion to assert claims against HST, the hotel's successor in inter-

est, unanimously affirmed; appeal from so much of said order as denied Landau's motion for *Yellowstone* relief unanimously dismissed as academic in view of the foregoing, all without costs.

In May 1999, the hotel entered into an agreement with Landau, which sells high quality costume jewelry in stores throughout the United States, allowing Landau to use space in the hotel to sell its jewelry. A significant portion of Landau's jewelry employs some degree of 14k gold in conjunction with synthetic stones. Section 1 (a) of the license limited Landau's sale to "high quality costume jewelry" and other high quality merchandise.

Approximately 10 months after the Landau license was executed, the hotel entered into a lease with plaintiff permitting plaintiff to use its store space at the hotel for merchandise such as "jewelry, time pieces, gifts, health and beauty aids, cultured pearls, tobacco product and candy and for no other purpose." This agreement contained a restrictive covenant whereby the hotel promised that as long as the plaintiff tenant was not in default under the lease, the hotel agreed to not rent any other space in the hotel "for the sale and/or display of Karat Gold Jewelry, watches and cultured pearls."

Plaintiff's principal was given a copy of the Landau license, and personally visited Landau's store in the hotel prior to signing its lease. During that visit plaintiff's principal was able to view the merchandise Landau had on display, including costume jewelry earrings that incorporated 14k gold settings with synthetic stones.

Four years after entering into its lease with the hotel, plaintiff commenced this action complaining that the merchandise on sale in Laudau's space violated the restrictive covenant in its lease. Plaintiff seeks damages from the hotel, as well as a permanent injunction against both the hotel and Landau seeking to halt the sale of some of its jewelry.

Supreme Court erred by granting plaintiff summary judgment on its first cause of action against the hotel on the grounds that Landau's operation and some of the jewelry it had for sale constituted a breach of the restrictive covenant in plaintiff's lease. The restrictive covenant by its terms is expressly prospective in that it provides that the hotel "will not rent" competing space, and as such constitutes an expression of future intention and a prohibition of future action. The fact that it is conditioned upon plaintiff not defaulting in its obligations under the lease is evidence that the restrictive covenant only became effective during the lease term, and was not intended to apply to uses that predate plaintiff's lease agreement with the hotel.

Moreover, plaintiff took possession with full knowledge not only of the specific provisions contained in Landau's license, but also with the type of merchandise that Landau had for sale in its operation in the hotel's lobby. As such plaintiff's claim against the hotel for damages and/or injunctive relief must be dismissed (*see Danish Maid v South Bay Ctr.*, 11 AD2d 768 [1960]; *see generally* Tigges, Annotation, *Validity, Construction, and Effect of Lessor's Covenant against Use of His Other Property in Competition with the Lessee-Covenantee*, 97 ALR2d 4).

Additionally, the claim against Landau was properly dismissed because Landau's license predated plaintiff's lease, and as such, Landau cannot be held to have notice of or be subject to it (*see Key Drug Co. v Luna Park Realty Assoc.*, 221 AD2d 598 [1995]).

Plaintiff's contention that its claim for injunctive relief against Landau should survive because Landau was on notice of the terms of the restrictive covenant in plaintiff's lease when Landau commenced a "new" term of its license in July 2002 is belied by the record. This agreement between Landau and the hotel merely amended the existing May 1999 license by extending its term and relocating Landau's operation in a different part of the hotel's lobby. As to all other particulars, the May 1999 agreement continued in effect, and governed the rights of the parties in regard to Landau's operation in the hotel lobby.

In addition, the record warrants a finding that Landau was selling merchandise as contemplated by its license with the hotel. Hyman, Landau's owner, testified that Landau had for years been selling products that incorporated 14k gold settings in combination with synthetic stones, as well as earrings that had 14k posts for hypoallergenic purposes. Landau's expert testified that once a precious metal is combined with something synthetic like a synthetic stone, it is considered "costume jewelry," and Landau's merchandise was, by industry standards, high quality costume jewelry. He also testified that jewelry such as that being sold by Landau was commonly classified at industry trade shows and by department stores as costume jewelry, and sold as such. Plaintiff's expert offered a differing opinion regarding the classification of costume and fine jewelry, but while he was experienced as an importer and wholesaler of "fine jewelry," he was not a retailer, and offered no testimony regarding the jewelry Landau was selling in its store in the hotel's lobby.

The hotel's cross claims against Landau should have been dismissed. Because the motion court correctly dismissed the fifth cause of action for injunctive relief against Landau, there is no claim remaining that would prevent Landau from exercis-

ing and fulfilling its rights under the May 1999 license. Once the claim against Landau for breach of license is dismissed, the other claims, for indemnification, contribution and attorneys' fees, must fall.

The motion to dismiss the third-party complaint, and plaintiff's motion to amend, were properly granted insofar as HST is the hotel's successor in interest. In light of this disposition, the *Yellowstone* application is academic.

We have considered the parties' other arguments for affirmative relief and find them without merit. Concur—Tom, J.P., Friedman, Gonzalez, Sweeny and Kavanagh, JJ.